IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MIRASOLES PRODUCE USA, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:22-cv-1240-E |
| | § | |
| SANCHEZ FARMS and | § | |
| ELIZABETH RAYAS, | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
<u>UNITED STATES MAGISTRATE JUDGE</u>**

Plaintiff Mirasoles Produce USA, LLC ("Mirasoles") has filed an amended motion for default judgment against Defendants Sanchez Farms and Elizabeth Rayas, *see* Dkt. No. 20, which United States District Judge Ada Brown has referred to the undersigned United States Magistrate Judge for findings, conclusions, and recommendation, *see* Dkt. No. 22.

For the reasons explained below, the Court should grant the amended motion for default judgment [Dkt. No. 20].

**Background**

This case concerns a claim of unpaid quantities of perishable agricultural commodities in violation of the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. §§ 499a et seq. *See* Dkt. No. 1 at 3.

Mirasoles entered into agreements with Sanchez Farms and its "owner, director, and/or at least 10% shareholder," Rayas, to ship and sell produce through

-1-

interstate commerce. *Id.* at 3. Mirasoles shipped the agreed-upon quantities, which Sanchez Farms accepted without objections. *See id.* Mirasoles then forwarded invoices to Sanchez Farms that reflected the quantity shipped and amounts owed, which Sanchez Farms failed to pay. *See id.* at 4.

Mirasoles now claims that Sanchez Farms remains in default for $33,568.75 despite the demand for payment. *See id.*

On June 7, 2022, Mirasoles filed this suit, alleging that the Defendants' failure to pay the invoices despite accepting delivery of the produce constituted a (1) failure to maintain its PACA trust; (2) unlawful dissipation of trust assets; (3) a breach of contract; and (4) a breach of fiduciary duty. *See id.* at 1.

Mirasoles has served Sanchez Farms and Rayas, but neither has timely appeared or answered Mirasoles's complaint. *See* Dkt. No. 20 at 1.

The Court ordered the Clerk of the Court to enter the clerk's entry of default under Federal Rule of Civil Procedure 55(a) against both Defendants. *See id.*

And Mirasoles now seeks default judgement against Defendants. *See id.*

## Legal Standards

Federal Rule of Civil Procedure 55(b)(2) governs applications to the Court for default judgment. *See* FED. R. CIV. P. 55(b)(2).

> In the Fifth Circuit, three steps are required to obtain a default judgment: (1) default by the defendant; (2) entry of default by the Clerk's office; and (3) entry of a default judgment by the district court. *See New York Life Ins. Co. v. Brown,* 84 F.3d 137, 141 (5th Cir. 1996). A default occurs when a defendant has failed to plead or otherwise respond to the complaint within the time required by the Federal Rules of Civil Procedure. *See id.* The clerk will enter default when default is

> established by an affidavit or otherwise. *See id.* After the clerk's entry of default, a plaintiff may apply to the district court for a judgment based on such default. *See id.*
>
> The Fifth Circuit favors resolving cases on their merits and generally disfavors default judgments. *See Rogers v. Hartford Life & Accident Ins. Co.,* 167 F.3d 933, 936 (5th Cir. 1999); *see also Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n,* 874 F.2d 274, 276 (5th Cir. 1989) ("Default judgments are a drastic remedy, not favored by the federal rules and resorted to by the courts only in extreme situations."). But this policy is "counterbalanced by considerations of social goals, justice, and expediency, a weighing process [that] lies largely within the domain of the trial judge's discretion." *Rogers,* 167 F.3d at 936 (quoting *Pelican Prod. Corp. v. Marino,* 893 F.2d 1143, 1146 (10th Cir. 1990) (internal quotations omitted)); *see also Merrill Lynch Mortg. Corp. v. Narayan,* 908 F.2d 246, 253 (7th Cir. 1990) (noting that default judgments allow courts to manage their dockets "efficiently and effectively").

*Arch Ins. Co. v. WM Masters & Assocs., Inc.*, No. 3:12-cv-2092-M, 2013 WL 145502, at *2-*3 (N.D. Tex. Jan. 14, 2013).

A plaintiff seeking a default judgment must establish: (1) that the defendant has been served with the summons and complaint and that default was entered for its failure to appear; (2) that the defendant is neither a minor nor an incompetent person; (3) that the defendant is not in military service or not otherwise subject to the Soldiers and Sailors Relief Act of 1940; and (4) that, if the defendant has appeared in the action, the defendant was provided with notice of the application for default judgment at least three days prior to the hearing. *See Arch Ins. Co.*, 2013 WL 145502, at *2-*3. The plaintiff must also make a *prima facie* showing there is "jurisdiction both over the subject matter and the parties." *Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001).

Before entering a default judgment, a court should consider any relevant factors. Those factors may include "(1) whether material issues of fact are at issue; (2) whether there has been substantial prejudice; (3) whether grounds for default are clearly established; (4) whether default was caused by good faith mistake or excusable neglect; (5) harshness of default judgment; and (6) whether the court would feel obligated to set aside a default on the defendant's motion." *Arch Ins. Co.*, 2013 WL 145502, at *3 (citing *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998)). The Court should also consider whether the defendant has a meritorious defense to the complaint. *See id.* Further, "a defendant's default does not in itself warrant the court in entering a default judgment. There must be a sufficient basis in the pleadings for the judgment entered." *Lindsey,* 161 F.3d at 893.

An entry of default "does not establish the amount of damages. After a default judgment, the plaintiff's well-pleaded factual allegations are taken as true, except regarding damages." *United States of Am. for Use of M-Co Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987) (cleaned up); *cf. Jackson v. FIE Corp.*, 302 F.3d 515, 524-31 (5th Cir. 2002) (holding that jurisdictional allegations and findings supporting a default judgment are not entitled to preclusive effect in the personal-jurisdiction context of Federal Rule of Civil Procedure 60(b)(4)). A court may enter default judgment against a party and determine damages without the benefit of an evidentiary hearing "where the amount claimed is a liquidated sum or one capable of mathematical calculation." *Leedo Cabinetry v. James Sales & Distrib., Inc.*, 157 F.3d 410, 414 (5th Cir. 1998) (cleaned up).

**Analysis**

I. <u>The Court has subject matter jurisdiction and personal jurisdiction.</u>

Mirasoles has shown that there is jurisdiction over the subject matter and over the parties. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this is a "civil action[] arising under the … laws … of the United States." 28 U.S.C. § 1331. Specifically, this is a civil action arising under PACA, a federal law.

This Court has personal jurisdiction over the parties. For purposes of diversity jurisdiction, "[t]he citizenship of a limited partnership is based upon the citizenship of each of its partners." *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1079 (5th Cir. 2008).

But, as to personal jurisdiction, neither the Supreme Court nor this circuit have explicitly addressed the question of whether an LLC's place of incorporation or principal place of business establish a basis for general jurisdiction. But the Supreme Court has implicitly provided guidance by applying the paradigm for assessing a corporation's general jurisdiction to an LLC. *See Daimler AG v. Bauman*, 571 U.S. 117, 118, 134 S. Ct. 746, 749, 187 L. Ed. 2d 624 (2014) (assessing whether an LLC had general jurisdiction by looking to its place of incorporation and principal place of business). And two district courts in this circuit have rejected an extension of *Harvey's* reasoning to a finding of personal jurisdiction. *See e.g., Carruth v. Michot*, No. A-15-CA-189-SS, 2015 WL 6506550, at *7 (W.D. Tex. Oct. 26, 2015) (explaining that "[the] argument lacks merit as it blurs principles of diversity jurisdiction and minimum contacts and ignores the Supreme Court's prohibition on 'talismanic jurisdictional

formulas'"); *Becnel v. Lamorak Ins. Co.*, No. CV 19-14536, 2022 WL 3369164, at *2 (E.D. La. Aug. 16, 2022) ("[t]he decisions in *Daimler* and *Goodyear* also apply equally to limited liability corporations"). And, so, the Supreme Court's equal application of the law and reasoning from courts in this circuit support the position that an LLC should be treated as a corporation for purposes of personal jurisdiction.

Here, Mirasoles is a limited liability company with its principal place of business in Hidalgo, Texas. *See* Dkt. No. 1 at 2. Sanchez Farms is a Texas business entity with its principal place of business in Dallas, Texas. *See id.* Rayas is or was an owner, officer, director, and/or at least 10 percent shareholder of Sanchez Farms during the relevant time period. *See id.* And so the Court has personal jurisdiction over the parties.

II.   The procedural requirements for default judgment have been met.

Mirasoles has satisfied the prerequisites for entry of default judgment against Defendants.

Defendants were served on July 26, 2022. *See* Dkt. No. 20 at 2.

The Clerk of the Court made an entry of default as to both Defendants on August 22, 2022. *See id.*

Sanchez Farms is not a natural person and so cannot be a minor, incompetent person, or in the military service. There is no evidence in the record to suggest that Rayas is a minor, an incompetent person, nor in the military service.

Finally, Defendants have not appeared in the action, and no hearing was held on the amended motion for default judgment – so giving notice to Defendants was not

-6-

necessary.

III. <u>The pleadings support entry of default judgment.</u>

The Court must find sufficient basis in the pleadings for the judgment requested. The Court takes as true the facts asserted by a plaintiff against a defaulting defendant. *See Escalante v. Lidge*, 34 F.4th 486, 492 (5th Cir. 2022). The defendants, by their default, admit the plaintiff's well-pleaded allegations of fact. *See id.* That principle is firmly established, but it is not without limits. *See id.* Even when a defendant is in default, a plaintiff is not "'entitled to a default judgment as a matter of right.'" *Id.* (quoting *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996) (per curiam)). "The defendant is not held to admit facts that are not *well-pleaded* or to admit conclusions of law.'" *Id.* (quoting *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). "A defaulting defendant is deemed to admit a plaintiff's factual allegations, but the district court still may inquire whether those allegations demonstrate legal liability." *Id.* at 489. Thus, even if a defendant defaults, a court may still deny default judgment if the plaintiff has failed to state a claim on which relief can be granted. *See id.* at 493.

When determining whether the requested default is "'supported by well-pleaded allegations' and has 'a sufficient basis in the pleadings,'" the Fifth Circuit "draw[s] meaning from the case law on Rule 8, which sets forth the standards governing the sufficiency of a complaint." *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015) (quoting *Nishimatsu Constr. Co.*, 505 F.2d at 1206)).

"Rule 8(a)(2) requires a pleading to contain 'a short and plain statement of the

-7-

claim showing that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. (8)(a)(2)). "The purpose of this requirement is to give the defendant fair notice of what the claim is and the grounds on which it rests." *Id.* Ultimately, "[t]he factual allegations in the complaint need only 'be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up)).

A.   <u>Violations of PACA</u>

The Court should grant Mirasoles's amended motion for default judgment as to its claims under PACA.

Mirasoles alleges violations of PACA. Despite seasonal invoices, Mirasoles alleges that Sanchez Farms failed to pay for all transactions and all amounts remain unpaid. *See* Dkt. No. 1 at 3. And Mirasoles claims that, under the "receipt of said commodities, a statutory trust arose" as to all commodities received, the inventory of said commodities, and the proceeds from their sale, "until full payment is made" by Sanchez Farms. *Id.* at 4. The failure to hold such benefits in the trust resulted in its dissipation, Mirasoles alleges, constituting violations of PACA. *See id.* at 5.

"In 1930, Congress enacted PACA to regulate the sale of perishable agricultural commodities in interstate commerce." *Sunterra Distribution, LLC v. Castros Distribution LLC*, No. 3:18-cv-2783-S, 2019 WL 4418320, at *4 (N.D. Tex. Aug. 22, 2019), (citing *Paisano Capital SA de CV v. 23 Tex. Produce, Inc.*, No. 3:19-CV-0852-B, 2019 WL 3239152, at *3 (N.D. Tex. July 18, 2019)), *rep. & rec. adopted*, 2019 WL

4414959 (N.D. Tex. Sept. 15, 2019). "[P]erishable agricultural commodities" are defined as "[f]resh fruits and fresh vegetables of every kind and character." 7 U.S.C. § 499a(b)(4). The "PACA requires all commission merchants, dealers, and brokers in perishable agricultural commodities to be licensed," and it prohibits them "from engaging in certain unfair trade practices, including a failure to pay promptly." *Id.* at § 499b(4); *Paisano Capital*, 2019 WL 3239152, at \*3 (citing 7 U.S.C. § 499b(4)). If a commission merchant, dealer, or broker fails to "make full payment promptly in respect of any transaction in any such commodity to the person with whom such transaction is had," they "shall be liable to the person or persons injured thereby for the full amount of damages ... sustained in consequence of such violation." 7 U.S.C. §§ 499b(4), 499e(a).

Congress strengthened the PACA's protections in 1984 to require produce buyers "to hold either the produce or all proceeds or accounts receivable from a subsequent sale of produce in trust for the benefit of unpaid sellers until 'full payment of the sums owing in connection with the transactions has been received by' the supplier." *Sunterra*, 2019 WL 4418320, at \*5. The trust is created automatically "when the dealer accepts the goods so long as the supplier complies with the specific notice requirements set out in 7 U.S.C. § 499e(c) and 7 C.F.R. § 46.46(f)." *Id.* A buyer may be held liable if it fails to "maintain trust assets in a manner that such assets are freely available to satisfy outstanding obligations" to its suppliers. 7 C.F.R. § 46.46(d)(1). "Any act or omission which is inconsistent with this responsibility, including dissipation of trust assets, is unlawful" and subjects the dealer to liability. *Id.*

To state a claim for relief under the PACA, a "[p]laintiff must establish that it is a trust beneficiary, and that a PACA trust was formed." *Paisano Capital*, 2019 WL 3239152, at *4. There are five elements to meet this burden:

> (1) the commodities sold were perishable agricultural commodities; (2) the purchaser of the perishable agricultural commodities was a commission merchant, dealer, or broker; (3) the transaction occurred in interstate or foreign commerce; (4) the seller has not received full payment on the transaction; and (5) the seller preserved its trust rights by giving written notice to the purchaser within the time provided by law.

*Sunterra*, 2019 WL 4418320, at *6 (cleaned up).

Mirasoles alleges that it sold perishable agricultural fresh fruits and vegetables to Sanchez Farms, "dealer and commission merchant," of agricultural commodities. Dkt. No. 1 at 2.

Mirasoles sells such produce "nationwide through interstate commerce," and holds a federal license from the PACA branch of the U.S. Department of Agriculture. *Id.*

Sanchez Farms, at all times relevant, acted as a "dealer and commission merchant" of perishable agriculture commodities and "either held a federal license from the U.S. Department of Agriculture/PACA Branch or was subject to licensing." *Id.* Sanchez Farms contracted with Mirasoles to receive fruits and vegetables on credit, which Mirasoles delivered. *See id.* at 3. The dates of transaction were November 2021 through February 2022, during which Mirasoles claims that it delivered $33,568.75 in produce to Sanchez Farms. *See id.*

But Sanchez Farms failed to "make payment promptly" for the multiple

transactions between it and Mirasoles, thus establishing its liability to Mirasoles "for the full amount of damages … sustained in consequence of such violation." *See* 7 U. S. C. §§ 499b(4), 499e(a).

And Sanchez Farms was required to "hold either the produce or all proceeds or accounts receivable from the subsequent sale of produce in trust" until full payment of the amounts owed to Mirasoles had been received. *See Sunterra*, 2019 WL 4418320, at *5. Mirasoles alleges that a trust was created automatically at Sanchez Farm's acceptance of the goods because it preserved its trust rights by including the required statutory language in each invoice giving written notice to Defendants of their outstanding sums. *See* 7 U.S.C. § 499e(c)(4).

As a result, Sanchez Farms can be held liable for failing to "maintain [the] trust assets in a manner that such assets are freely available to satisfy outstanding obligations to its suppliers." *See* 7 C. F. R. § 46.46(d)(1). This responsibility includes protecting the trust from dissipation. *See id.*

Mirasoles's allegations demonstrate "that it sold [Sanchez Farms] … [$33568.75] worth of produce for which it has not been paid." *Sunterra*, 2019 WL 4418320, at *5. They also establish that the necessary notice requirements have been met to preserve Mirasoles's PACA trust benefits because the invoices contain the required statutory language. *See id.*; *see also* 7 U.S.C. §§ 499e(c)(3)–(4).

This is sufficient to plead that Sanchez Farms violated provisions of the PACA.

B.    <u>Breach of Fiduciary Duty</u>

The Court should grant Mirasoles's amended motion for default judgment as to

its breach of fiduciary duty claim.

"The Fifth Circuit established that PACA liability extends to an agricultural business's controller." *Mirasoles Produce USA, LLC v. TALYGAP Produce, Inc.*, No. 7:22-CV-00055, 2022 WL 1165151, at *4 (S.D. Tex. Apr. 20, 2022) (citing *Ruby Robinson Co. v. Herr*, 453 F. App'x 463, 465-66 (5th Cir. 2011). "As noted, the PACA requires produce buyers to maintain a trust for 'the produce or all proceeds or accounts receivable' from the sale of the produce 'for the benefit of unpaid sellers' until full payment is made." *Sunterra*, 2019 WL 4418320, at *7. "The buyer, as trustee, has a fiduciary duty under law to maintain the trust assets at sufficient levels to ensure full payment to sellers, who are the trust beneficiaries," and a buyer may be held liable for failure to properly maintain trust assets. *Hardie's Fruit & Vegetable Co., LP v. BIMC, LP*, No. 3:18-cv-1454-D, 2018 WL 3302733, at *2.

"PACA liability attaches first to the licensed commission merchant, dealer, or broker of perishable agricultural commodities." *Golman-Hayden Co., Inc. v. Fresh Source Produce Inc.*, 217 F.3d 348, 351 (5th Cir. 2000). But "the fact that others may be secondarily liable 'does not preclude an injured party from seeking relief from officers and directors in the same action in which it seeks to establish primary liability for the corporation.'" *Sunterra*, 2019 WL 4418320, at *7.

Mirasoles alleges that Rayas "is or was an owner, officer, director, and/or at least 10% shareholder of Sanchez Farms during the relevant time period." Dkt. No. 1 at 2. Mirasoles also alleges that Rayas "is or was a person in control of, and responsible for, the day-to-day operations of Sanchez Farms" and its assets, including "its PACA

trust assets." *Id.* at 2-3. Mirasoles claims, therefore, that Rayas breached her fiduciary duties under PACA. *See id.* at 6-7.

Mirasoles's pleadings that Sanchez Farms failed to timely pay the amounts owed under the multiple invoices sufficiently demonstrate the party's lack of assets to satisfy its liability under the PACA. *See Sunterra*, 2019 WL 4418320, at *7.

Mirasoles has also sufficiently alleged that Rayas, through her operation and control of Sanchez Farms, breached her fiduciary duty by "failing or refusing" to maintain a PACA trust. Dkt. No. 1 at 7.

And, because Mirasoles preserved its trust rights under the PACA, Rayas may also be held personally liable for the $33, 568.75 that remains owed. *See Golman-Hayden*, 217 F.3d at 351-52.

Mirasoles has therefore provided a sufficient basis in the pleadings for recovering against Rayas for breach of fiduciary duty under the PACA.

C.   Breach of Contract

The Court should grant Mirasoles's amended motion for default judgment as to its breach of contract claim.

"[T]he elements of a breach of contract claim are (1) a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff was damaged as a result of the breach." *Mirasoles Produce USA, LLC v. TALYGAP Produce, Inc.,* No. 7:22-CV-00055, 2022 WL 1165151, at *4 (S.D. Tex. Apr. 20, 2022).

Mirasoles alleges the existence of Sanchez Farm's agreement to purchase fresh

produce from Mirasoles on credit, Mirasoles's delivery of said produce, and Sanchez Farm's failure to pay despite demand. These allegations are sufficient to establish a breach of contract.

IV.   Consideration of other factors support entry of default judgment.

Although default judgment is a harsh remedy, Defendants' failure to answer Mirasoles's complaint supports default judgment on its claims.

There are no material issues of fact at issue as Defendants admitted Mirasoles's well-pleaded allegations of fact by their default.

There has not been substantial prejudice against Defendants. And there are clearly established grounds for default: Defendants failed to answer Mirasoles's complaint. There is no indication that Defendants' default was caused by good faith mistake or excusable neglect. And so the Court would not feel obligated to set aside a default on Defendants' motion. *See Lindsey*, 161 F. 3d at 893.

V.   The Court should award Mirasoles's damages, attorneys' fees, costs, and post-judgment interest.

A.   Damages

The allegations in Mirasoles's PACA claim, taken as true, entitle it to damages.

Ordinarily, damages will not be awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts. *See United Artists Corp. v. Freeman*, 605 F. 2d 854, 857 (5th Cir. 1979). But, when the amount of damages and/or costs can be determined with certainty by reference to the pleadings and supporting documents, and when a hearing would not be beneficial to the court, a hearing is

-14-

unnecessary. *See Leedo Cabinetry*, 157 F 3d at 414; *see also James v. Frame*, 6 F. 3d 307, 310 (5th Cir. 1993). A sum capable of mathematical calculation is one that can be "computed with certainty by reference to the pleadings and supporting documents alone." *James*, 6 F 3d at 311 (internal citations omitted).

Under the PACA, "any commission merchant, dealer, or broker" that violates the PACA, "shall be liable to the person or persons injured thereby for the full amount of damages ... sustained in consequence of such violation." 7 U. S. C. § 499e(a). "Courts have found that copies of contracts, invoices, purchase orders, emails with payment details, and statements of anticipated costs, together with computations and affidavits, are a sufficient evidentiary basis for damages." *Sunterra*, 2019 WL 4418320, at *8.

Mirasoles requests $33,568.75 in damages due to Sanchez Farms and Rayas' failure to pay the principal amount owed under the invoices. *See* Dkt. No. 1 at 9. Mirasoles provided the invoices detailing the transactions between it and Sanchez Farms showing the Defendant's remaining principal balance of $33,568.75. *See id.* at 11.

These documents establish that the principal balance of $33,568.75 remains unpaid, and a hearing is unnecessary because the amount of damages are "ascertainable from the ... motion, or the evidence attached thereto, or otherwise capable of mathematical calculation." *Sunterra*, 2019 WL 4418320, at *9.

And so, in total, Sanchez Farms and Rayas owe Mirasoles $33,568.75 in damages.

B.   Pre-Judgment Interest

The allegations in Mirasoles's PACA claim, taken as true, entitle it to pre-judgment interest.

The "PACA itself does not expressly provide for the award of prejudgment interest, but district courts have 'broad discretion to award discretionary prejudgment interest to PACA claimants under 7 U.S.C. § 499e(c)(2).'" *Sunterra*, 2019 WL 4418320, at *9. "Courts 'have relied upon the language in 7 U.S.C. § 499e(c)(2) to allow a PACA claimant to recover ... prejudgment interest' if provided for by contract." *Id.* "When the contract is evidenced by an invoice, '[c]ourts often look to [the] invoices when fixing prejudgment interest.'" *Id.*

Mirasoles alleges and requests accrued interest on the principal amount "at the rate of 18% per annum" ($15.00 per diem), from November 2021 to February 2022 amounting to $4,256.81, and pre-judgment interest at "a rate of $16.55 per diem" on the principal amount from August 23, 2022, until judgment is entered in this action. *See* Dkt. No. 20 at 8.

Mirasoles provides copies of the invoices, which illustrate an express contractual claim for interest at the rate of 1.5% per month (18% per annum) as a term and condition of sale. *See id.* at 7. The invoices provided by Miraosles are sufficient to support its request for prejudgment interest. *See Sunterra*, 2019 WL 4418320, at *9 (relying on invoices to award pre-judgment interest).

And so Mirasoles should be awarded accrued interest at a rate of 18% per annum from November 2021 to February 2022, amounting to $4,256.81, as well as

pre-judgment interest at a rate of $16.55 per diem from August 23, 2022, until the date judgment is entered in this action.

C. <u>Post-Judgment Interest</u>

The allegations in Mirasoles's PACA claim, taken as true, entitle it to post-judgment interest.

Mirasoles alleges and requests post-judgment interest "at the current federal rate of 4.80% per year until such time as the Judgement is paid in full." *See* Dkt. No. 20 at 8. "Post-judgment interest is awarded as a matter of course" under 28 U.S.C. § 1961(a). *Meaux Surface Prot., Inc. v. Fogleman*, 607 F.3d 161, 173 (5th Cir. 2010) (citing 28 U.S.C. § 1961(a)). "[D]istrict courts do not have the discretion to deny post-judgment interest on monetary judgments." *Sunterra*, 2019 WL 4418320, at *10.

And so Mirasoles should be awarded post-judgment interest at the applicable federal rate from the date of judgment until it is paid in full.

D. <u>Attorneys' Fees</u>

Mirasoles also seeks attorneys' fees but seeks to leave to file a motion for such fees on a post-judgment basis. The Court should direct Mirasoles to file a motion for an award of attorneys' fees at a later date.

**Recommendation**

The Court should grant Plaintiff's Amended Motion for Default Judgment [Dkt. No. 20].

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these

findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: November 16, 2023

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE